Scott Hervey, State Bar No. 180188
Scott Plamondon, State Bar No. 212294
**WEINTRAUB GENSHLEA CHEDIAK**
Law Corporation
400 Capitol Mall, 11th Floor
Sacramento, California   95814
(916) 558-6000 – Main
(916) 446-1611 – Facsimile

Attorneys for Plaintiff
Camelot Distribution Group, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMELOT DISTRIBUTION GROUP., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DOES 1 THROUGH 1210, inclusive.<br><br>Defendants. | Case No. 2:11-CV-2432<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**COPYRIGHT INFRINGEMENT**<br>**[17 U.S.C. § 501]**<br><br>**DEMAND FOR JURY TRIAL** |

INTRODUCTION

Plaintiff Camelot Distribution Group, Inc. ("Camelot" or "Plaintiff") is the exclusive United States distributor of the motion picture titled *Wreckage* (the "Motion Picture").  As of the filing of this Complaint, the Motion Picture has not yet been commercially released in the United States.

The Defendants, and each of them, engaged in the distribution of the Motion Picture via one or more peer to peer ("P2P") networks through the use of software which operates using the BitTorrent protocol.

1  The Plaintiff is informed and believes that BitTorrent is a protocol that enables fast downloading of large files using minimum Internet bandwidth. BitTorrent is different from other download methods such as downloading a file directly from a single source. (A visual depiction of downloading a file directly from a single source is attached hereto as Exhibit 1) or traditional "peer to peer" systems.  To download a file using a peer-to-peer system, a user would first send out a request for a particular file the user wants to download.  The peer to peer file sharing software would then query other computers that are connected to the Internet and running the same peer to peer file-sharing software.   When the peer to peer software finds a computer that has on its hard drive the file requested by the user, the peer to peer software automatically initiates a download from the source computer.  (A visual depiction of traditional peer to peer file sharing is attached hereto as Exhibit 2).

Unlike either direct source or traditional peer to peer systems, BitTorrent maximizes transfer speed by gathering pieces of the file a user wants and downloading these pieces simultaneously from a "swarm" of other users who already have them on their personal computers. (A visual depiction of BitTorrent file trading is attached hereto as Exhibit 3.) This process makes popular and very large files, such as videos and television programs, download much faster than is possible with other protocols.

A user who wants to make a file available that is not already on a BitTorrent system will first makes a complete copy of the file itself available through a BitTorrent node.  This original complete copy is known as a *seed*.   The BitTorrent protocol shares the content of the seed by breaking it up in small segments called *pieces* and distributing them randomly between other users who want to download the seed file. Those users (also known as *peers*) then share these pieces with each other. This saves the seed the trouble of sending the same pieces over and over to different peers and enables all the users in a swarm to participate in the distribution of the files regardless of their percentage of completion.  As each peer receives a new piece of the seed file, that peer becomes a source of that piece to other peers, relieving the original seed from having to send a copy to every peer.

///

First Amended Complaint for Copyright Infringement; Demand for Jury Trial

After creating the seed, the user will then create a small reference file called a *Torrent*. The torrent file contains the instructions necessary to reassemble the seed pieces and use the content. All peers involved in the distribution of a single original seed file use the same torrent file to reassemble the seed and use the content.

The BitTorrent protocol includes an operating principal commonly referred to as "tit for tat." Essentially, this means that in order to continue to download files, the system will require a user to configure its computer to act as a source. If a user continues to run its BitTorrent client software after the user completes downloading a file, other users can receive and pieces from the first user's computer. This causes the first user to rank higher in the "tit-for-tat" system thereby increasing the first user's future download speed rates.

With BitTorrent, the task of distributing the seed file is shared by those who want it. Using the BitTorrent protocol it is possible for the seed to send only a single copy of the file itself to an unlimited number of peers. When a peer completely downloads a copy of the seed file, it becomes an additional seed. This eventual shift from peers to seeders determines the overall "health" of the seed file (as determined by the number of times a file is available in its complete form). This distributed nature of BitTorrent leads to a flood-like spreading of a file throughout peers. As more peers join the swarm, the downloading speed and the likelihood of a successful download increases. Relative to standard Internet hosting, use of the BitTorrent protocol provides a significant reduction in the original distributor's hardware and bandwidth resource costs. It also provides redundancy against system problems, reduces dependence on the original distributor and provides a source for the file which is generally temporary and therefore harder to trace than when provided by the enduring availability of a host in standard file distribution techniques.

## THE PARTIES

1. Camelot Entertainment Group, Inc. is a corporation formed pursuant to the laws of California, duly authorized to do business in this state, with its headquarters and primary place of business in Los Angeles County, California.

///

2. The true names of Defendants are unknown to the Plaintiff at this time. Each Defendant is known to the Plaintiff only by the Internet Protocol ("IP") address assigned to that Defendant by his or her Internet Service Provider on the date and at the time at which the infringing activity of each Defendant was observed. The Plaintiff believes that information obtained in discovery will lead to the identification of each Defendant's true name and permit the Plaintiff to amend this Complaint to state the same.

3. Joinder of each of these Defendants in a single action is appropriate because each Defendant was contemporaneously engaged in a coordinated effort with the other Defendants to reproduce and distribute Plaintiff's copyrighted works to each other and hundreds of third parties via BitTorrent protocol. The Defendants' reproduction and distribution of the Motion Picture took place over a fifteen (15) calendar day period and emanated from an original single seed file, as reflected by the shared .torrent file (BTiH: NH4UUYNDDV737OK32TXBKP3ZIZ42AJNS). Plaintiff's claims against the Defendants therefore presents issues of law and fact common to all Defendants and all right to relief sought against Defendants arises from the same series of transactions or occurrences.

## JURISDICTION AND VENUE

4. Jurisdiction in the District Court is based upon 28 U.S.C. § 1331, federal question, in that the action arises out of violations of the Copyright Act, 17 U.S.C. § 501.

5. Venue is proper in the Eastern District pursuant to 28 U.S.C. §§ 1391 and 1400, in that a substantial portion of the events giving rise to the dispute arose in this district, the harm was sustained in this district, and at least one Defendant is found in this district.

<u>Rights in the Motion Picture</u>

6. Plaintiff is licensed with the exclusive right to distribute the Motion Picture in the United States for any and all media platforms, including but not limited to theatrical, home video, television and Internet. Plaintiff was granted this exclusive right from the producer of the Motion Picture on or about April 24, 2010.

7. The producer of the Motion Picture, David Frigero, registered the copyright in the Motion Picture on August 29, 2006. (Pau 3-065-271).

Distribution Of The Motion Picture

8. The Plaintiff is informed and believes that each Defendant, without the permission or consent of Plaintiff, made use of one or more P2P networks to download a copy of the Motion Picture, distributed the Motion Picture to the general public, by making the Motion Picture available for distribution to other users of the P2P network.

9. The Plaintiff does not know the true identity of the Defendants. The Plaintiff has identified each Defendant by the IP address assigned to that Defendant by his or her Internet Service Provider on the date and at the time at which the Defendant's infringing activity occurred.

10. The Defendants knew, or should have known, that they did not have the right to copy or distribute the Motion Picture.

## FIRST CLAIM FOR RELIEF

### (Copyright Infringement, 17 U.S.C. § 501)

### (Against All Defendants)

11. Plaintiff realleges and incorporates herein by reference the allegations in paragraphs 1 through 10 above as if set forth in full.

12. Plaintiff is the holder of the exclusive right to distribute the Motion Picture in the United States in all media.

13. Defendants, and each of them, infringed Plaintiff's distribution rights in and to the Motion Picture through the conduct alleged herein, including, but not limited to, downloading a copy of the Motion Picture without authorization from Plaintiff, and distributing copies of the Motion Picture by, among other activities, making a copy of the Motion Picture available for others to download and further distribute to other users, all without authorization from Plaintiff, in violation of 17 U.S.C. § 501.

14. The infringement of Plaintiff's distribution right in the Motion Picture was willful and intentional. Each Defendant knew that they did not have the right to copy or distribute the Motion Picture because they did not have the authorization from Plaintiff (or the producer) to do so. The Motion Picture identifies and acknowledges the producer as the copyright owner,

and the Defendants knew they did not have the producer's (or Plaintiff's) authorization to distribute the Motion Picture. The Motion Picture also contains a warning which informed each Defendant that copying the Motion Picture is unlawful.

15. Defendants' infringing actions have caused Plaintiff injury in the form of lost sales, lost profits, and a reduction in market price for the Motion Picture because Defendants are making the illegal P2P copies of the Motion Picture available for free. Plaintiff continues to be injured by this reduction in market price, and it will take many years for the market to recover to the point where Plaintiff can charge its customary, proper retail price, and in fact the market may never recover to that point. Defendants' infringing actions therefore entitle Plaintiff to recover its actual damages and Defendants' profits in accordance with 17 U.S.C. § 504. Plaintiff may, at its election, recover statutory damages in accordance with 17 U.S.C. § 504(c).

16. Defendants' infringing actions have caused, and continue to cause, irreparable injury to Plaintiff's ability to distribute the Motion Picture by making the Motion Picture available for no charge over various P2P online networks. Defendants' actions therefore entitle Plaintiff to temporary and permanent injunctive relief pursuant to 17 U.S.C. § 502.

17. Defendants' infringing actions also entitle Plaintiff to recover its full costs in bringing this action, including reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

WHEREFORE, Plaintiff prays for judgment as set forth below.

PRAYER

AS TO THE FIRST CLAIM FOR RELIEF

(Copyright Infringement)

(Against All Defendants)

1. For an order requiring Defendants, and each of them, to show cause, if any they have, why they should not be enjoined as hereinafter set forth, during the pendency of this action, pursuant to 17 U.S.C. § 502;

2. For a temporary restraining order, a preliminary injunction, and a permanent injunction, all requiring Defendants, and each of them, and their respective officers, directors, agents, attorneys, servants and employees, and all persons acting under, in concert with, or for

them:

      a.    to refrain from distributing or copying the Motion Picture without express, written authorization from Plaintiff;

      b.    to turn over to Plaintiff or destroy all copies of the Motion Picture in their control or possession;

3.    For actual damages and Defendants' profits pursuant to statute, 17 U.S.C. § 504;

4.    For statutory damages pursuant to 17 U.S.C. § 504;

5.    For costs of suit and Plaintiff's reasonable attorneys' fees according to statute, 17 U.S.C. § 505; and

6.    For such other and further relief as the Court may deem just and proper.

Dated:  September 15, 2011

**WEINTRAUB GENSHLEA CHEDIAK**
Law Corporation

By:   /s/ Scott M. Hervey
      Scott M. Hervey
      State Bar No. 180188

Attorneys for Plaintiff
Camelot Distribution Group, Inc.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury provided by Rule 38 of the Federal Rules of Civil Procedure.

Dated:  September 15, 2011          **WEINTRAUB GENSHLEA CHEDIAK**
                                    Law Corporation

                                    By:   /s/ Scott M. Hervey
                                          Scott M. Hervey
                                          State Bar No. 180188

                                          Attorneys for Plaintiff
                                          Camelot Distribution Group, Inc.

Exhibit 1

CLIENT-SERVER FILE DOWNLOAD



How Stuff Works, How BitTorrent Works, *Traditional Client-Server Downloading*, *available at* http:// http://computer.howstuffworks.com/bittorrent.htm  (last visited Sept. 14, 2011).

Exhibit 2

P2P FILE SHARING



How Stuff Works, How BitTorrent Works, *Peer to Peer File Sharing*, *available at* http://http://computer.howstuffworks.com/bittorrent1.htm  (last visited Sept. 14, 2011).

Exhibit 3

BITTORRENT FILE DISTRIBUTION



How Stuff Works, How BitTorrent Works, *What BitTorrent Does*, *available at* http:// http://computer.howstuffworks.com/bittorrent2.htm  (last visited Sept. 14, 2011).